# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 5361 | **DATE** | 4/24/2001 |
| **CASE TITLE** | USA ex rel John Pecoraro vs. Thomas Page, Warden | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   John Pecoraro's petition for a writ of habeas corpus is denied. ENTER MEMORANDUM OPINION.
Any pending motions are moot. [43-1, 47-1]

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | APR 2 5 2001 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 4/24/2001 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| KAM courtroom deputy's initials | Date/time received in central Clerk's Office | AMM mailing deputy initials | |

97-5361.011                                              April 24, 2001

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America, ex rel.<br>John Pecoraro,<br><br>        Petitioner,<br><br>v.<br><br>Thomas Page, Warden, Menard<br>Correctional Center,<br><br>        Respondent. | No. 97 C 5361 |

## MEMORANDUM OPINION

### INTRODUCTION

In this habeas corpus case the petitioner, John Pecoraro, challenges his state court murder conviction and resulting death sentence. The conviction and sentence were affirmed by the Illinois Supreme Court in People v. Pecoraro, 144 Ill. 2d 1, 578 N.E.2d 942 (1991). Pecoraro argues that his conviction was obtained in violation of his federal constitutional rights to due process and to the effective assistance of counsel. He seeks a new trial.

The murder victim was Jimmy Christian, whose body was found on December 8, 1982 in the passenger seat of his car, which was parked on a Chicago street. Christian had died from a single gunshot



wound to the chest. An expended .357 magnum bullet was found embedded in the passenger side seat cushion.

At the time of his death, Jimmy Christian had been married for 10 years to Nadine Christian. He worked at Parklane Jewelers as a jewelry salesperson. Two other employees of Parklane Jewelers were Nadine's friend Martha Jackson and the petitioner, John Pecoraro.

The Chicago Police investigated the crime, but, as of August 1986, no one had been arrested for it. On August 6, 1986, the petitioner flagged down a passing squad car driven by officer Jeffrey Becker. Becker had no knowledge about the murder of Jimmy Christian. Petitioner told officer Becker that he wanted a ride to the police station to turn himself in for a murder he had committed. Becker handcuffed petitioner, gave him a <u>Miranda</u> warning and then took information from petitioner concerning the murder. Petitioner described how he had waited outside Jimmy Christian's home and accosted him with a gun when he came out. Petitioner said that he forced Christian into his own car and drove him to the location where the car was found. He then shot Christian in the chest with a .45 caliber pistol, which he later threw into the Chicago River. (The gun was never recovered.) Petitioner stated that he was turning himself in because his conscience was bothering him.

At the police station, petitioner was interviewed by other officers and an Assistant State's Attorney. He gave additional details but refused to sign the statement that was typed up.

At the station, petitioner stated that he and Nadine Christian has worked together selling jewelry and had eventually become lovers. Nadine complained of mistreatment by her husband Jimmy, and she and petitioner discussed the possibility of killing Jimmy.

Prior to trial, Pecoraro filed a motion to suppress his statements on the ground that when he made them he had been under the influence of large amounts of drugs and alcohol. He argued that these intoxicants rendered him incapable of making voluntary statements. A hearing was held on the motion and petitioner testified about his large intake of drugs and alcohol during the hours just before his encounter with officer Becker. His testimony was corroborated by his girlfriend, Lisa Shankman, and a friend, Joseph Siemioneko. The State called officer Becker, Detective Arpaia and Assistant State's Attorney Barbaro. They all testified that when defendant gave his statements he did not appear to be under the influence of drugs or alcohol and that he spoke and walked without difficulty.

The trial court denied the motion, stating that it found petitioner and his witnesses to be less credible than the witnesses for the State.

**PETITIONER'S CONTENTIONS**

Pecoraro's claims of constitutional error relate to three subject areas: (1) the testimony of Martha Jackson; (2) defense counsel's failure to present a drug and alcohol expert; and (3) failure to present evidence that Ron Baker admitted killing Jimmy Christian.

1. **Alleged Errors Regarding the Testimony of Martha Jackson**

Martha Jackson was a principal witness against the petitioner. Her testimony tended to corroborate petitioner's admissions that he and Nadine Christian had been lovers. (Petitioner, who had a prior murder conviction, did not testify at the trial.) Jackson testified that she had seen Nadine and petitioner together at work on a daily basis and that she had observed petitioner kissing Nadine at a bar. She stated that on that occasion the petitioner had commented to her that if he could not have Nadine, nobody would. ("She's mine. If I can't have her, nobody will.") Jackson stated that on another occasion she saw petitioner at Nadine's home and that he was carrying what she thought was a .45 caliber pistol in a shoulder holster.

Petitioner argues that as a result of the prosecution's violation of its duty to provide impeaching material (<u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>United States v. Bagley</u>, 473 U.S. 667 (1985)), his trial counsel was deprived of the opportunity to show that Jackson's testimony may have been influenced by a promise that

in exchange for her testimony she would not be prosecuted for a crime she had committed. Specifically, on January 31, 1983, the police interviewed Jackson after receiving information that she had solicited the petitioner, Pecoraro, to kill her husband. Jackson at first denied any involvement, but, after a polygraph examination showed her to be uncooperative, she admitted that she had agreed to pay Pecoraro $4,000 if he would kill her husband. Jackson was then arrested for solicitation of murder. She agreed to wear a recording device for the purpose of attempting to obtain incriminating statements from Pecoraro. A court order was required for the recording, and an Assistant State's Attorney prepared an affidavit for Jackson's signature, reciting the facts as to her solicitation of Pecoraro and her agreement with him that he would murder her husband for $4,000.

It is this affidavit that petitioner claims should have been turned over to his counsel pursuant to Brady and Bagley. Jackson was never prosecuted for the solicitation, and Pecoraro argues that the affidavit would have forced Jackson to admit on cross-examination that she had committed the crime of solicitation, leaving it to the jury to infer that her testimony against Pecoraro was the consideration for her not being prosecuted.

There is disagreement as to whether the affidavit was turned over to trial counsel, but the greater weight of the evidence persuades us that it was not.

Respondent argues that the solicitation matter could not have been used for impeachment because at the time of the trial in 1987 the three-year statute of limitations had run on any solicitation charge. Therefore, argues respondent, Jackson had nothing to gain from her testimony. But this overlooks the argument that the bargain was struck between Jackson and the State back at the time she admitted the solicitation and that by testifying at the trial she was simply sticking to her part of the bargain. We regard the statute of limitations as immaterial to petitioner's argument.

Respondent has another argument, though, which we think does have merit. Martha Jackson's admissions concerning the solicitation to murder her husband were detailed in a series of police reports, and these were turned over to the defense. There is no doubt that counsel had these reports at the time of the trial. Thus, there was no concealment or failure to disclose the information about the solicitation. It could have been inquired into on cross-examination had defense counsel desired to do so. Pecoraro contends that the information in the police reports was not useful because it could have been denied by Jackson, whereas she could not have denied the statements in her signed affidavit. But it seems very unlikely that Jackson would have denied the solicitation had she been questioned about it, and petitioner's concern is entirely speculative. Moreover, as respondent correctly points out, the officers who prepared the reports could have been

called as witnesses by petitioner to testify that Jackson had confessed the solicitation had she denied it.

Our conclusion is that there was no due process violation in the failure to turn over the Jackson affidavit. The same information was contained in the police reports, and there is no reason to believe the result in the case would have been any different had the affidavit been turned over as well.

* * * *

Pecoraro's other argument in regard to Martha Jackson is that his trial counsel was constitutionally ineffective in failing to cross-examine her (1) about the solicitation matter and (2) about the fact that when she was initially interviewed by the police she did not mention the kissing incident, Pecoraro's statement that if he could not have Nadine, no one would, and her having seen him in possession of a .45 caliber pistol.

The constitutional standard for performance of counsel is the well known <u>Strickland</u> test:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent to making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland v. Washington, 466 U.S. 668, 689 (1984) (citation omitted).

We will deal first with the question of whether counsel fell outside this "wide range of reasonable professional assistance" in failing to utilize the information in the police reports to cross-examine Martha Jackson about the solicitation matter. The purpose of the cross-examination would have been to suggest that Jackson was testifying falsely against Pecoraro in return for some promise or indication by the prosecution that she would not be charged with the solicitation. Had this effort been made by defense counsel, it would have been appropriate for the state to rehabilitate the witness by showing that she had made statements consistent with her testimony prior to the time she had the alleged motive to lie. See People v. Williams, 262 Ill. App. 3d 734, 745, 635 N.E.2d 781, 790 (1st Dist. 1994). A police report shows that on December 11, 1982, Martha Jackson told Detectives Bogucki and Schalk that petitioner and Nadine had been together frequently, that she described the kissing incident in the tavern, described how petitioner had said "If I can't have her, nobody can," and mentioned that she had seen petitioner with the .45 caliber pistol. Therefore, if defense counsel had brought out that in her first interview, on December 8, 1982, Jackson had not mentioned Pecoraro's relationship with Nadine, the tavern incident and the .45 caliber pistol, the State would have been entitled to rehabilitate her by showing that she

had mentioned these things three days later, on December 11, which was almost two months before the police first learned in the interview of January 31, 1983 that Jackson had solicited someone to murder her husband.

The question is whether the attempt at impeachment was a clearly indicated strategy, considering the prospect of rehabilitation by the prior consistent statements. Respondent argues that Pecoraro was really better off to let the matter go, since the rehabilitation testimony would have brought out that Pecoraro was a suspect in the Christian murder as early as December 11, 1982, just three days after Christian's body was discovered. Respondent suggests that it would not have been to Pecoraro's advantage to call to the attention of the jury that he had been an early suspect; his defense was stronger if the jury had the impression that his encounter with officer Becker on August 6, 1986 came out of the blue, with no prior indication of police interest in him. This is a strategic consideration that might well have counseled against this cross-examination.

Another consideration bearing upon the strategy of bringing out Martha Jackson's solicitation of Pecoraro is the obvious danger that it could result in bringing to the jury's attention that it was Pecoraro who was being solicited to murder Jackson's husband, and that, in fact, he agreed to do it. Petitioner is vague as to how his counsel would have been able to bring out only some of the

facts. In one of the depositions we permitted in this case, an attorney who had represented Pecoraro in pretrial proceedings, but not at the trial, stated that, had he known of the solicitation, he would have made a motion <u>in limine</u> asking for leave to bring out the solicitation, but omitting any mention of Pecoraro. Perhaps such a motion would have been successful, but, not having heard the other side of such an argument, we are unable to conclude with any assurance just what would have happened had the motion been made.

We are not persuaded that counsel's failure to attempt the suggested impeachment was ineffective assistance under <u>Strickland</u>. The gain would have been little, at most, and it is equally likely that the net effect of the impeachment, combined with the rehabilitation, would have reenforced Jackson's testimony in the minds of the jury.

### 2. Failure of Defense Counsel to Present A Drug and Alcohol Expert

In his post-conviction proceeding, Pecoraro presented affidavits of Louis Hemmerich, Ph.D., a clinical psychologist who specializes in alcohol and drug addiction. Basing his conclusions on his review of the transcript of the hearing on the motion to suppress evidence and upon an interview of his own with the petitioner, Dr. Hemmerich concluded that, at the time he confessed to the murder of Jimmy Christian, Pecoraro may have been experiencing cocaine psychosis and blackout, which would have

impaired his judgment and understanding and made him subject to suggestions by the interrogating authorities.

The post-conviction petition was denied, and, on appeal, the Illinois Supreme Court affirmed. See People v. Pecoraro, 175 Ill. 2d 294, 677 N.E.2d 875 (1997). Agreeing with the trial court that the failure to offer expert testimony of this kind was not ineffective assistance under Strickland, the court concluded that Pecoraro had "failed to show a reasonable probability that expert testimony would have altered the outcome of the suppression hearing or trial." Id. at 358. The court noted the Dr. Hemmerich had not stated how likely it was that defendant "might falsely confess to a crime merely because he had been implicated in it," and, as to the proposition that defendant might have assented to leading questions by police, the court noted that:

> [T]he record shows that defendant flagged down a police officer at random and gave a somewhat detailed account of the offense. The officer had no prior knowledge of the offense and it is thus impossible that this initial confession was the product of leading or prompting by police.

Id. We have no basis for disagreeing with this analysis. We would add that Dr. Hemmerich's testimony may not have been admissible, in any event. An expert witness's opinion testimony is inadmissible where the expert relies solely or substantially on the out-of-court statements of a defendant in forming the opinion. See People v. Britz, 123 Ill. 2d 446, 460-63, 528 N.E.2d 703, 710-11 (1988). Pecoraro has not shown that Dr. Hemmerich's opinion was based

substantially on facts or data of the type reasonably relied upon by experts in his field. Compare Melecosky v. McCarthy Bros., 115 Ill. 2d 209, 503 N.E.2d 355 (1986); People v. Anderson, 113 Ill. 2d 1, 495 N.E.2d 485 (1986).

Dr. Hemmerich could have testified in response to a hypothetical question incorporating Pecoraro's sworn testimony, but this would have required that Pecoraro testify at trial. In view of the fact Pecoraro was subject to impeachment with his prior conviction for murder, it could hardly have been ineffective assistance for counsel not to put him on the stand simply to provide a basis for expert drug and alcohol testimony.

Finally, in deciding whether to advise Pecoraro to take the stand, counsel would have had in mind the conclusion of the judge at the suppression hearing that Pecoraro's testimony about his drug and alcohol use on the day in question was "exaggerated and at times untruthful." People v. Pecoraro, 175 Ill. 2d at 329, 677 N.E.2d at 892. There would have been no reason to anticipate that a jury would have a different reaction.

### 3. Failure to present evidence that Ron Baker admitted killing Jimmy Christian

In Chambers v. Mississippi, 410 U.S. 284 (1973), the United States Supreme Court held that it was a due process violation to exclude reliable evidence that another person admitted committing the murder for which the defendant is on trial. The Court noted

that the statements made by the third person in that case "were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." Id. at 300.

Pecoraro claims that one Ron Baker "admitted that he killed Jimmy Christian." Pet.'s Amended Mem. Concerning Evid. Hearing at 11. He argues that these admissions by Baker should have been offered in evidence by Pecoraro's trial counsel. Counsel's failure to investigate the possibility of using the Baker admissions was, in petitioner's view, a departure from the range of effective representation required by Strickland. Petitioner also argues that the State was guilty of a Brady violation in failing to turn over fragmentary notes of a polygraph examination taken by Baker.

Petitioner raised the Ron Baker admission in his state post-conviction proceeding and it was considered by the Illinois Supreme Court. The court assumed that Baker had actually made the admission, but, after analyzing the circumstances surrounding it, held that the admission did not have the kinds of indicia of reliability discussed by the United States Supreme Court in Chambers v. Mississippi. See People v. Pecoraro, 175 Ill. 2d at 308, 677 N.E.2d at 882.

In this court, Pecoraro requested leave to conduct discovery that might bear out his contention that reliable information about Baker's admission existed at the time of trial. Over the objection

of Respondent, we permitted a number of depositions to be taken. Far from supporting petitioner's theory, these depositions have shown that there is no evidence that Ron Baker ever admitted killing Jimmy Christian. The primary witness petitioner had been hoping to rely upon, a Reverend Gibson, denied ever having met Baker. He testified that he heard from Brian Diffy that Diffy's wife, Patricia, who was formerly married to Ron Baker, had said that Baker admitted killing Christian. When Brian Diffy's deposition was taken, he denied that his wife Patricia or anyone else had ever said that Ron Baker had admitted killing Jimmy Christian. Patricia Diffy testified that she had never heard any such admission by Baker and denied telling Brian Diffy that Baker had made such an admission.

It is unnecessary to prolong this discussion. Clearly, even after the exhaustive discovery permitted in this habeas proceeding, there is no evidence, let alone admissible evidence, that Ron Baker ever admitted killing Jimmy Christian.

The note regarding Ron Baker's polygraph examination contains nothing useful to Pecoraro's defense and it was certainly no <u>Brady</u> violation not to turn it over.

Petitioner has failed to show any ineffectiveness of counsel in regard to the question of whether Ron Baker admitted killing Jimmy Christian.

- 15 -

## **CONCLUSION**

The court concludes that the petitioner has failed to establish that his conviction for the murder of Jimmy Christian was obtained in violation of any of his rights under the Constitution of the United States. Therefore, the petition for a writ of habeas corpus will be denied.


Date:     April 24, 2001

ENTER:    _____
          John F. Grady, United States District Judge